Steven Jay Katzman (SBN 132755)
skatzman@bklwlaw.com
Anthony R. Bisconti, (SBN 269230)
tbisconti@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
601 W. 5th Street, Ste. 720
Los Angeles, California 90071
Telephone (213) 528-3400
Facsimile (949) 369-3701

Attorneys for Defendant Sang Churl Paik

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SANG CHURL PAIK,<br><br>    Defendants. | Case No. 5:18-cr-0283-GW<br>Hon. George H. Wu<br><br>**DEFENDANT SANG CHURL PAIK'S SENTENCING POSITION BRIEF**<br><br><u>Hearing Information</u>:<br>Date:  May 9, 2022<br>Time:  8:00 a.m.<br>Place: Courtroom 9D<br>          United States District Court<br>          350 W. 1st Street<br>          Los Angeles, CA 90012 |

I.  **INTRODUCTION**

Sang Churl Paik is a 56-year-old father of 5 children (including two minors) who came to this country with his family 43 years ago seeking better education and opportunities than were available in his native South Korea. His family had little income, with both his parents working two jobs each to make ends meet. No one in his family spoke English. Through his determination and will, Paik eventually graduated from the University of California at Irvine, obtained a DDS from UCLA School of Dentistry, and became a U.S. citizen and successful dentist. Along the way, he consistently helped others, including by serving as the "Director For Missions" at his church, regularly travelling throughout the world performing missionary work including community development, humanitarian work, dental treatment, and other medical treatment.

Regrettably, years ago Paik also made an error in judgment that now brings him before the Court. Paik acknowledges the seriousness of his conduct and takes full responsibility for it. He has also attempted to make things right. He has cooperated fully with the government, which was able to obtain a conviction against his former friend, Dr. Donald Lee. *See United States v. Donald Woo Lee*, Case No. 16-CR-415-GW (C.D. Cal.).

On December 20, 2018, Paik pled guilty to a single-count information charging him with violation of 18 U.S.C. § 152(3). Paik admitted that he submitted a declaration containing false statements in bankruptcy proceedings commenced by Dr. Lee, by falsely representing the circumstances surrounding a payment received from Dr. Lee and the source of funds he used to pay the bankruptcy trustee as part of a settlement agreement relating to that payment.

The base offense level for this offense is 14, to which the government and Paik have agreed. The Presentence Investigation Report ("PSR") submitted by the United States Probation Office & Pretrial Services ("Probation") correctly credited Paik with a 2-level offense reduction based upon his acceptance of responsibility, and a 2-level offense reduction based on Paik's minor role in the offense, for a total offense level of 10.

1  The parties agree on Paik's appropriate total offense level. The parties further agree that Paik's total offense level results in an advisory sentencing guideline of 6-12 months and that the Court should impose a non-custodial sentence. Probation concurs and recommends the same in the PSR. Additionally, Paik has provided the government with substantial assistance in its prosecution of Dr. Lee, and the government has sought a further downward departure pursuant to Section 5K1.1, which should result in a 5-level offense level reduction and guideline range of 0-6 months. And the government and Paik also agree that no further supervision is necessary.

Accordingly, and for the reasons set forth more fully below and in the government's Sentencing Memorandum filed on April 25, 2022, the Court should impose a non-custodial sentence on Paik with no supervised release, impose no fine, and the mandatory $100 special assessment.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Paik was charged with a single count information for making a false declaration in bankruptcy proceedings initiated by Dr. Lee. *See* Dkt. No. 1 (Information). According to the Information, an agent for the Court-appointed trustee in the bankruptcy proceedings determined that one of the debtors in the bankruptcy case reported making a payment of $252,000, which Dr. Lee claimed was a purchase of catheters made on the "black market." *Id.* at 2-3. The Information further alleges that the bankruptcy trustee determined that the $252,000 payment was not a payment for catheters, but rather a payment made to Paik, which Paik used to make an investment on behalf of Dr. Lee. *Id.* at 3.

The bankruptcy trustee believed this was an avoidable transfer under 11 U.S.C. § 549 and negotiated a settlement with Dr. Lee and Paik. *Id.* Pursuant to that settlement, among other things, Paik agreed to remit $166,000 to the bankruptcy estate, and Dr. Lee agreed to remit $86,000 to the bankruptcy estate. Dr. Lee and Paik also agreed to provide declarations under penalty of perjury disclosing the source of their settlement payments. *Id.* The Information further alleges that Paik thereafter submitted a declaration in the bankruptcy proceedings containing knowingly and materially false statements under penalty of perjury

regarding the source of funds for his settlement payment to the bankruptcy trustee. *Id.* at 4. In particular, the declaration submitted by Paik asserted that he obtained a loan from his brother to pay the bankruptcy trustee $166,000 and that none of the settlement proceeds came from Dr. Lee, his wife, or his related corporate entities.

As described in the government's Sentencing Memorandum, once Paik was approached by law enforcement, he quickly retained counsel and made a proffer to the government on February 2, 2018. Paik admitted during that proffer that the statements in his declaration concerning the circumstances of the transfer he received and payment he made to settle with the bankruptcy trustee were false and provided the government with information concerning Dr. Lee's role with respect to the same.

On September 13, 2018, prior to the filing of the Information, Paik entered a Plea Agreement with the government. *See* Dkt. No. 13.  On December 20, 2018, Paik entered a guilty plea pursuant to the Plea Agreement, which the Court accepted. *See* Dkt. No. 24.

The government separately indicted Dr. Lee in connection with the same underlying facts as alleged in the information and healthcare fraud, among other crimes. *See U.S. v. Lee*, Case No. 2:16-cr-004150-GW, Dkt. No. 38 (First Superseding Indictment). As acknowledged by the government, the information Paik provided assisted the government in its prosecution of Dr. Lee. That case went to trial in October of 2019. The jury convicted Dr. Lee on all counts that were tried. *See id.* at Dkt. No. 160 at 1478-79. While Paik met with the government and would have testified at trial as a government witness, Dr. Lee thereafter entered a guilty plea with respect to Count 9 of his Indictment, which charged him with violating 18 U.S.C. § 152(d) for submitting a false declaration concerning the source of settlement payments made to the bankruptcy trustee. *See id* at 17-20 (SSI); *see also* Dkt. No. 167 (Minutes of Change of Plea Hearing).

### III. A NON-CUSTODIAL SENTENCE IS APPROPRIATE

#### A. Legal standard.

In determining the appropriate sentence, the Court is required to consider all of the statutory sentencing factors set forth in 18 U.S.C. § 3553, including, among other factors:

the history and characteristics of the offender; the nature and circumstances of the offense; the need to reflect the seriousness of the offense, promote respect for law, provide for just punishment, and afford adequate deterrence; and the need to provide the defendant with needed education, vocational training, medical care or other correctional treatment.  18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220 (2005).  The Sentencing Guidelines are but one of the many factors for the court to consider, and "§ 3553(a)(3) directs the judge to consider sentences other than imprisonment." *United States v. Gall*, 552 U.S. 38 (2007); *Gall*, 552 U.S. at 59.  The Court must impose a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing.  18 U.S.C. § 3553(a).

      **B.**    **The factors in 18 U.S.C. § 3553 favor leniency.**

            **1.**    **Paik's history and circumstances.**

                  **a.**    **Paik came to America with his family as child and was able to realize the "American Dream."**

Paik was born in Seoul, South Korea, in 1966. He came to the United States with his father, mother, brother, and sister when he was 13 years old. His father and mother were both teachers in Korea (chemistry and math, respectively), but worked as a wholesale food vendor and factory work, respectively, in the United States. *See* PSR ¶ 50-52. Paik's parents brought the family to the United States in the hopes of pursuing more education and work opportunities. *Id.* ¶ 53.

Paik's family struggled upon arrival in the United States. His parents each worked two jobs to support their children. *Id.* ¶ 54. No one in his family spoke English. *Id.* Paik was immediately enrolled in middle school where he began taking English as a Second Language (ESL) classes. *Id.*

Through hard work and perseverance, Paik eventually graduated from high school and enrolled at the University of California at Los Angeles (UCLA) in 1984. He attended UCLA as an undergraduate for 3 years, and then transferred to the University of California at Irvine, where he attended as an undergraduate for the next three years. PSR ¶ 67-68. After taking time off school, Paik attended UCLA School of Dentistry from 1991 to 1994, when

he graduated with his DDS (Doctor of Dental Surgery). He has been a licensed dentist since then. *Id.* ¶ 70.

Since 2005, Paik has worked at Lee and Paik, DDS, Inc., which he opened together with a Dr. Lee.[1] Paik eventually gained ownership over the entire practice. In 2015, he sold the business to Dr. Kwon and became an employee of his. PSR ¶ 74. Paik continues to work full-time at the practice earning a modest income. *Id.*

Paik has been married to his wife for nearly 17 years. They have five children, two of whom are minors. Paik has a very close relationship with his children, the oldest of whom has followed Paik's path into dentistry. *See* PSR ¶¶ 56-57. His other two adult children attend college studying computer science, while his two minor children attend private school. *Id.* ¶ 57.

### b.  Paik has a history of helping others.

Paik's difficult circumstances in coming to this country as a child with limited resources caused him to always work hard, never take things for granted, focus on family, and have an abiding desire to help others whenever he can. For example, Paik is an active member of his church, where he holds the position of "Director For Missions." PSR ¶ 71. As part of this position, Paik travels regularly to other countries to perform missionary work. This missionary work includes, among other things, community development, humanitarian work, dental treatment, and other medical treatment. He is also a member of Interserve USA, which is an international, interdenominational, overseas-focused agency providing services to poor and marginalized people across the globe.

### c.  Paik is unlikely to reoffend.

Paik's acceptance of responsibility and cooperation with the government underscore his remorse and the fact that he is highly unlikely to reoffend. Additionally, the recidivism rate is only 9.8% for those legally married, 6.5% for those with college or advanced degrees at the time of the offense, and just 6.2% for those over the age of 50 at the time of

---

[1] This is not the same Dr. Lee as involved in the bankruptcy proceeding and this offense.

sentencing. *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History of Computation of the Federal Sentencing Guidelines*, at 28-29 (May 2004).[2] For someone like Paik sharing all these traits, the risk of reoffending is likely even lower.

### 2. Nature of the offense.

On September 24, 2013, Dr. Lee and his wife filed and caused to be filed a bankruptcy petition under Title 11 of the United States Code (the "Bankruptcy Code") on behalf of themselves. On November 18, 2013, Dr. Lee filed and caused to be filed a bankruptcy petition under the Bankruptcy Code for his medical practice, Prime Partners Medical Group ("Prime Partners"). On or about May 2014, the two bankruptcy cases were substantively consolidated.

In or around July 2014, Paik received a payment of $252,000 from Prime Partners. The bankruptcy trustee negotiated a settlement with Paik and Dr. Lee whereby Dr. Lee agreed to remit $86,000 and Paik agreed to remit $166,000 to the bankruptcy trustee, and both Paik and Dr. Lee agreed to submit declarations under penalty of perjury disclosing the source of their respective payments.

Paik submitted a declaration in the bankruptcy case. Paik's declaration stated, among other things, that his cousin "told me that he knew various individuals who were in the business of selling catheters to vein clinics . . . [m]y cousin also happened to owe me approximately $240,000. I called [my cousin] and asked if he could repay his debt to me by purchasing the catheters on behalf of [Prime Partners] and delivering them to [Primer Partners]. [My cousin] agreed to this arrangement . . . I then contacted Dr. Lee, informed him of the agreement that I had reached with [my cousin], and asked him if he wanted the catheters. He did. So I asked Dr. Lee to write me a $252,000 check to cover the cost of the catheters." Paik's declaration further stated that "I obtained a loan from my brother [] to pay the Trustee $166,000 required under the settlement." In fact, Paik had not discussed catheters with his cousin or arranged the purchase of catheters through a cousin on behalf

---

[2] Available at https://www.ussc.gov/research/research-publications/measuring-recidivism-criminal-history-computation-federal-sentencing-guidelines (last visited January 5, 2022).

of Dr. Lee in order to pay a debt, and Paik's brother did not loan him money; rather, Dr. Lee remitted and caused to be remitted cashiers' checks amounting to $166,000 to Paik's brother, which were then deposited and remitted to Paik, which he used to fund his payment to the bankruptcy trustee.

Paik acknowledges that he should not have agreed to submit a declaration that did not accurately describe the circumstances surrounding his initial receipt of payment from Prime Partners and failed to accurately disclose the source of the settlement payment he made to the bankruptcy trustee. While Dr. Lee asked Paik to make these false statements and Paik agreed to do so to help his friend, Paik acknowledges this was wrong and he should not have agreed to do it.

### 3. Just punishment.

Here, a non-custodial sentence with no further supervision is "sufficient, but not greater than necessary" to achieve the goals of sentencing. Certainly, a custodial sentence is not necessary. Paik is an upstanding, generous, family-centric person, who here engaged in conduct that he certainly is not likely to repeat. Paik understands the gravity of his offense and the errors in judgment he made. But putting Paik in prison would undermine the goals of sentencing because it would disrupt his familial, social, and professional networks, and disregard Paik's nature and characteristics as an otherwise responsible, law-abiding citizen who has accepted responsibility for his conduct and fully cooperated with the government in its investigation and prosecution of Dr. Lee. It would also hinder Paik's ability to assist his children with their education, his ability to practice his profession, and his ability to continue his missionary work.

Additionally, supervised release here is not necessary to achieve the goals of sentencing. Probation recommends a two-year term of supervised release. And while that recommendation is certainly more reasonable than a term of custody, there is no articulation as to what purpose supervised release would serve in this case, or how it would promote the goals of sentencing. As Probation has acknowledged, "[w]ith the exception of this incident, which occurred four years ago, Paik has been living as a law abiding citizen for decades.

7
DEFENDANT SANG CHURL PAIK'S SENTENCING POSITION BRIEF

He is a highly successful dentist and family man who is the primary income earner for his family." Paik has been on pretrial supervision for over three years, without incident and in full compliance. There is no need for supervised release as part of Paik's sentence to punish Paik.

Nor is there a need for a two-year term of probation to promote respect for the law; Paik has shown his respect for the law by accepting responsibility for his offense and cooperating fully with the government. Paik participated in an extensive proffer session with the government prior to the filing of the Information and was prepared to testify at Dr. Lee's trial but for the Court's severance of the bankruptcy fraud counts from Dr. Lee's health care fraud counts (and as noted above, Dr. Lee pled guilty to the bankruptcy fraud count after his health care fraud conviction at trial). Nor is there a need to deter Paik, a 56-year-old professional and father of 5 with no relevant criminal history and low probability of reoffending based on his characteristics. Finally, there is no need to burden the Probation Office by asking it to provide Paik with "needed education, vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(D). The limited resources of the Probation Office would be better directed elsewhere. Furthermore, as the government's sentencing position acknowledges, Paik has been on pretrial supervision for several years without incident. There is no indication that requiring additional supervision is necessary to achieve the goals of sentencing in this case.

Balanced against these considerations is the "seriousness of the offense," 18 U.S.C. § 3553(a)(2)(A). It is true that Paik submitted a false declaration in the bankruptcy proceedings. But as noted in the PSR, there were no victims harmed by his acts. Further, Paik did not benefit from his conduct. While serious, under the circumstances here a felony conviction and the lifelong collateral consequences that go with it is more than enough to punish Paik for his conduct.

      **C.**    **The Sentencing Guidelines call for a non-custodial sentence.**

Paik and the government agree that the appropriate base offense level is 14. *See* Plea Agreement, at ¶ 16; *see also* U.S.S.G. § 2J1.3. Because Paik accepted responsibility for his

conduct the Court should apply a two-level reduction in the offense level. Additionally, because of Paik's minor role in the offense, the Court should apply an additional two-level reduction in the offense level, yielding an offense level of 10. The advisory sentencing range is 6-12 months and falls within Zone B of the sentencing table.[3]

### 1. The Court should apply a 2-level offense level reduction due to Paik's acceptance of responsibility.

The Guidelines make clear that "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which [the defendant] is accountable under § 1B1.3 . . . will constitute significant evidence of acceptance of responsibility . . . ." U.S.S.G. § 3E1.1, cmt. (n. 3). Paik fully accepted responsibility here by acknowledging his conduct and entering a plea agreement with the government and guilty plea with the Court. *See* Dkt. Nos. 13 (Plea Agreement) & 24 (Minute Order Following Change of Plea Hearing).

### 2. The Court should apply a 2-level offense level reduction because Paik was a minor participant in the offense.

The Guidelines provide that the offense level should be decreased by 2 levels "[i]f the defendant was a minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). This adjustment applies to a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* at Comm. 5. Here, Paik is clearly less culpable than the other primary participant in the offense, namely Dr. Lee. While Paik is responsible for making a false statement in a declaration related to Dr. Lee's bankruptcy proceeding, the declaration related to Dr. Lee's unauthorized post-bankruptcy transfer of funds made to invest in a restricted stock and the repayment of these funds to the bankruptcy estate with estate money. Paik submitted the declaration at the

---

[3] "If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment." U.S.S.G. § 5C1.1, cmt. n. 4.

request of and as a favor to Dr. Lee, and did not benefit financially at all from the offense conduct. The totality of the conduct involved establishes that Paik played a minor role in the offense.

Accordingly, when applying the acceptance of responsibility and mitigating role adjustments, the applicable adjusted offense level should be 10. The advisory guideline range is 6-12 months and falls within Zone B of the Sentencing Table.

### D. The Court should apply a 5-level offense level reduction considering Paik's substantial assistance to the government.

In addition to the foregoing, the Court should grant the government's motion for a downward departure pursuant to § 5K1.1. As explained above and detailed in the government's sentencing position memorandum, Paik provided the government with substantial assistance in its prosecution of Dr. Lee, and was prepared to testify at Dr. Lee's trial. This information assisted the government obtain a conviction of Dr. Lee; indeed, after going to trial on the other counts against him, Dr. Lee pled guilty to Count 9 against him, which concerned the false statements in the bankruptcy proceeding.

Accordingly, the Court should apply a 5-level offense level reduction when sentencing Paik, which would result in a total offense level of 5. The advisory guideline range for this offense level is 0-6 months and falls within Zone A of the Sentencing Table.

### E. Paik should not receive any fine as part of his sentence.

The Court should not assess Paik with a fine as part of his sentence. The PSR recommends that the Court impose a fine of $2,000 as part of Paik's sentence based on his financial condition. Probation's recommendation of a fine of $2,000 is premised upon expected costs to the government of any term of probation, or term of imprisonment and term of supervised release, potentially including drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. *See* PSR ¶ 105. But the government and Paik agree that that Paik should not be incarcerated and should not be subject to supervised release. Accordingly, imposition of a fine as part of Paik's sentence is unwarranted.

## IV. CONCLUSION

For the foregoing reasons, the Court should impose a non-custodial sentence on Paik with no supervised release, impose no fine, and the mandatory $100 special assessment.

Dated: May 2, 2022

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By: _/s/ Steven Jay Katzman_
Steven Jay Katzman
Anthony R. Bisconti
Attorneys for Defendant Sang Churl Paik

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Orange County, California; that my business address is 601 W. 5th Street, Ste. 720, Los Angeles, California 90071; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **DEFENDANT SANG CHURL PAIK'S SENTENCING POSITION BRIEF** on all interested parties as follows:

United States Probation & Pretrial Services, Los Angeles Office
Mairi Cervantes
Mairi_Cervantes@cacp.uscourts.gov

[X]   **BY E-MAIL:** I transmitted a PDF version of the foregoing document by electronic mail via egarcia@bklwlaw.com to the party(s) identified above using the email address(es) indicated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 2, 2022 at Los Angeles, California.

_____
Elizabeth Garcia